501 So.2d 735 (1987)
Jeffrey William HARRIS, Appellant,
v.
The STATE of Florida, Appellee.
No. 85-1253.
District Court of Appeal of Florida, Third District.
February 3, 1987.
Bennett H. Brummer, Public Defender, and Ordonez, Friend & Fleck and Geoffrey C. Fleck and Dean M. Gettis, Sp. Asst. Public Defenders, for appellant.
Robert A. Butterworth, Atty. Gen., and Michael J. Neimand, Asst. Atty. Gen., and Donald Loughran, Certified Legal Intern, for appellee.
Before BARKDULL, HENDRY and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
The evidence adduced in support of the charge that this eighteen-year-old defendant trafficked in cocaine by selling or delivering it, or aiding or abetting its sale, or actually or constructively possessing it, is woefully inadequate to establish his guilt of anything except perhaps keeping very bad company or, to paraphrase him, "going along for the ride." Accordingly, we reverse the defendant's conviction and direct that he be discharged.
Viewed in a light most favorable to the State, the evidence shows that an informant, who did not testify at trial, was driven to a hotel where, by prearrangement with the informant, some undercover narcotics detectives were waiting to purchase cocaine. In the pick-up truck with the informant were four other persons  the defendant, Jeffrey Harris, riding as a passenger in the bed of the truck; his father, Herbert Harris; and Phillip Warner and Anthony Valencia. At the hotel the informant, unaccompanied, went to the detectives' room and pointed to the truck from a window. The informant then went out to the truck and returned to the detectives' room with all of the truck's occupants except Jeffrey. In the room, Valencia handed a package of cocaine to the detectives, and when he, along with Herbert Harris and Warner, asked for money, they were arrested. One of the detectives then went downstairs and arrested Jeffrey, who was in the lobby of the hotel. Jeffrey, accused of trafficking in cocaine and given Miranda warnings, purportedly told the arresting officer "that he was only along for the ride, he'd never touched the cocaine, he only drove it down."
Assuming, arguendo, that Jeffrey's ambiguous statement to the officer is read generously in favor of the State to mean that Jeffrey knew when he went along for the ride that the cocaine was *736 being transported in the truck by one of his companions,[1] knowledge that an offense is being committed is not the functional equivalent of being a participant in the crime with the requisite criminal intent. Horton v. State, 442 So.2d 1064 (Fla. 1st DCA 1983). It is likewise firmly established that mere presence at the scene of the crime is not sufficient to prove one's participation in it. Horton v. State, 442 So.2d 1064. Thus, there being no evidence that the defendant participated in the crime perpetrated by his companions by aiding or abetting them,[2] and there obviously being no evidence that the defendant trafficked in cocaine by actually selling it, there is left only the question whether the defendant's presence as a passenger in the bed of a pick-up truck in which other persons were transporting cocaine can fulfill the State's remaining burden to show that, at the least, the defendant actually or constructively possessed the cocaine and thereby trafficked in it.
We have no difficulty with the answer to this remaining question. It is apodictic that to prove that the defendant possessed the cocaine the State must show, and it clearly did not, that he actually possessed it, or must show that he, with knowledge of its presence on the truck, had the ability to maintain control over the cocaine, that is, constructively possessed it. Griffin v. State, 276 So.2d 191 (Fla. 4th DCA 1973); Langdon v. State, 235 So.2d 321 (Fla. 3d DCA 1970); Markman v. State, 210 So.2d 486 (Fla. 3d DCA 1968). Because it has been held that the dominion and control necessary to establish constructive possession is not shown, for example, (1) where the defendant, whose companion was in the process of selling quaaludes to a police officer, stated to the undercover buyer, "is that all you're going to buy, 300 ludes? Why don't you buy them all?", Kickasola v. State, 405 So.2d 200 (Fla. 3d DCA 1981); (2) where the defendant was present at the sale of valium, participated in counting the money, and was present at discussions concerning additional sales, Di Sangro v. State, 422 So.2d 14 (Fla. 4th DCA 1982), rev. denied, 434 So.2d 887 (Fla. 1983); (3) where, after the police officer and confidential informant negotiated the purchase of cocaine with persons other than the defendant, the transaction was completed in a bedroom where the cocaine was lying on a table ten feet from where the defendant stood, Green v. State, 460 So.2d 986 (Fla. 4th DCA 1984); and (4) where cocaine was found hidden inside a roll of toilet tissue in the glove compartment of the defendant's sister's car which the defendant was driving and the defendant was concerned with the search of the car and upset that the drugs were discovered, A.S. v. State, 460 So.2d 564 (Fla. 3d DCA 1984), a fortiori, it cannot be said that Jeffrey Harris constructively possessed the cocaine in the present case.
Reversed and remanded with directions to discharge the defendant.
NOTES
[1] It is arguable that it was not until his arrest for trafficking that Jeffrey realized that he had been traveling in a truck with cocaine and that his statement to the officer was not an admission of his prior knowledge, but rather an expression of wonder that one could be arrested for trafficking by virtue of being in a car where others possessed cocaine. See N.W. v. State, 470 So.2d 93, 94 (Fla. 1st DCA 1985) (juvenile's ambiguous statement following Miranda warnings that "he didn't want to take the rap himself" did not serve to bolster State's case against juvenile for aiding and abetting a burglary). Since Jeffrey was indisputably not the driver, his statement "[I] only drove it down" most probably meant "the cocaine and I were in the same truck."
[2] There is no evidence whatsoever that the defendant's presence in the truck or lobby was as a lookout.